IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>CAMERON LOUIS DIXON,<br><br>                Defendant. | Case No. 1:21-CR-151-02<br><br>**MEMORANDUM IN SUPPORT OF SENTENCING** |

## I. INTRODUCTION

[1.]   The Defendant, Cameron Louis Dixon (hereinafter "Cameron") was charged in Count One for Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of Title 21 U.S.C. § 846; Count Seven, Possession with Intent to Distribute Oxycodone, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and Title 18 U.S.C. §§ 2; Count Eight, Possession with Intent to Distribute Hydromorphone, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and Title 18 U.S.C. §§ 2; and Count Nine, Possession with Intent to Distribute Alprazolam, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and Title 18 U.S.C. §§ 2.

[2.]   On or about July 13, 2022, the Defendant was arrested in Michigan and an initial appearance was held. The Defendant was released on bond with conditions. On July 21, 2022, the Defendant made an Initial Appearance in the District of North Dakota and was released under the Michigan imposed conditions. On May 26, 2023,

1

the Defendant appeared for a bond violation hearing and was released on bond with amended conditions.

[3.] A plea agreement was filed between the Plaintiff, United States of America, and the Defendant, on or about July 12, 2023. The plea agreement called for Mr. Dixon to plead guilty to Count 1. Under the terms of the agreement, the parties agreed under the advisory sentencing guidelines that the highest base level is 20 with the following adjustments: (1) a two-level reduction for acceptance of responsibility; and (2) a one-level reduction for timely accepting responsibility resulting in a total adjusted offense level of 17. The Government agreed to recommend a sentence on the low end of the guideline range.

[4.] Cameron is free to recommend any sentence including a departure or variance within the guideline range that he believes is appropriate, provided that he notifies the United States of his intent to do so within the time frame of filing a sentence memorandum pursuant to court local rule 32.1(B). The Government agreed to an extension to file the sentencing memorandum to Friday, January 12, 2024.

## II. FACTUAL BACKGROUND

[5.] Mr. Dixon was charged with and indicted for one count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 and counts of Possession with Intent to Distribute Oxycodone, Hydromorphone, and Alprazolam in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and Title 18 U.S.C. §§ 2. Cameron pled guilty to the offense of the first count of Conspiracy to Distribute and Possess with Intent to

Distribute Controlled Substances, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.

[6.]    The facts indicate Cameron was recruited to bring a backpack which contained narcotics to North Dakota. At first, Cameron was not aware there were narcotics in the backpack, but upon discovering that there were drugs it the backpack, he admitted he did not dispose of them, report them to police, or take other appropriate action, but instead continued on to North Dakota for the purpose of delivering the narcotics to North Dakota.

[7.]    Cameron has a minimal criminal history, primarily surrounding use and abuse of marijuana.

### III. OFFENSE LEVEL

[8.]    The count to which Cameron pled guilty has a highest base level of 20. Under the plea agreement, the United States and the Defendant agreed to a two-level downward adjustment based on Cameron's willingness to accept responsibility in a timely fashion and an additional one-level adjustment for timely accepting responsibility, for a total offense level of 17. Cameron is free to argue for any sentence.

[9.]    Cameron has objected to his criminal history category and maintains that objection here. All of Defendant's arrests relate to marijuana possession, either in Michigan or Ohio. See Docket #125, ¶¶ 17-30. Cameron maintained that the Michigan counts were considered at sentencing together, and as such should be considered as only 1 criminal history point.

[10.]   Cameron further objects on the grounds that in both Michigan and Ohio, marijuana possession is no longer illegal. As such, Cameron argues that his criminal history points should be reduced because either: (1) since the charges are no longer illegal, they should not be counted against Cameron's criminal history, alternatively, (2) that the Court should consider Cameron eligible for a downward departure based on the sentencing guidelines.

[11.]   **1. <u>Validity of Offenses for Criminal History Calculation</u>**.

[12.]   "The Comprehensive Crime Control Act sets forth four purposes of sentencing." (<u>See</u> 18 U.S.C. § 3553(a)(2).) A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

Introductory Commentary to Chapter 4, United States Sentencing Guidelines. In this case, Cameron urges the Court to recognize that four (4) arrests for marijuana dating back more than eight (8) years to more than ten (10) years are not sufficient to characterize Cameron as a 'repeat criminal offender' under the purposes of the Comprehensive Crime Control Act nor the United States Sentencing Guidelines. This principle is reinforced by the legalization of marijuana across the nation.

[13.]   Cameron's argument is not without authority. In *United States v. Boone*, No. 2:20-CR-00185-BRM-4, 2022 WL 14558235, at *2 (D.N.J. Oct. 25, 2022), <u>reconsideration denied,</u> No. 2:20-CR-00185-BRM-4, 2022 WL 17722927 (D.N.J. Dec.

4

15, 2022), the New Jersey Court excluded from considering Naijer Boone's criminal history category a New Jersey conviction for simple marijuana possession after the state decriminalized and expunged simple marijuana possession for certain individuals. Similarly to Cameron's situation, in Michigan, not only is marijuana possession no longer illegal (see MCL §§ 333.27951 – 333.27967), but Michigan recently also passed an "expungement" law relating to marijuana possession which appears similar to the law considered in the *Boone* case out of New Jersey. See MCL § 780.612e. The Michigan expungement law is a rebuttable presumption that a misdemeanor marijuana offense be expunged. Id. In other words, the offense is presumed expunged until the state prosecutor shows otherwise. As such, Cameron submits that his criminal history should be reduced by two (2) points, for the Michigan arrests outlined in paragraphs 29 and 30 of the Presentence Investigation Report.

[14.] Regarding the more than decade old charges in Ohio, Cameron urges the same conclusion. In Ohio, the legalization of marijuana is incorporated in Ohio Rev. Code 3780.01-3780.99. There, Ohio has made the use of marijuana legal for anyone over the age of 21. See Ohio Rev. Code 3780.01, 3780.04. As such, Cameron also urges the Court to not consider the criminal history set forth in paragraphs 27 and 28 of the Presentence Investigation Report.

[15.] Based on the foregoing, Cameron urges the Court to consider that he should have a reduction in criminal history points. Cameron asserts that based on the legalization of marijuana in both Michigan and Ohio, that those offenses are no

longer illegal within the definitions considered by the sentencing guidelines. As such, his criminal history category should be a I as his points would be reduced by four (4).

[16.] Considering a criminal history category I, with an offense level of 17, Cameron's guideline range is 24-30 months.

[17.] **2. <u>Downward Departures</u>**.

[18.] Even if the Court does not agree that the points for criminal history should be reduced considering the change in characterizing the offenses from criminal offenses to non-criminal offenses and the corresponding expungement law in Michigan, Cameron moves the Court for a downward departure pursuant to USSG §4A1.3. United States Sentencing Guidelines §4A1.3 commentary 3, provides, in pertinent part:

> 3. Downward Departures.—
>
> (A) Examples.—A downward departure from the defendant's criminal history category may be warranted based on any of the following circumstances:
> …
>> (ii) The defendant received criminal history points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person.

Defendant submits to the Court that the charge in paragraph 28 is indicative of possession only for personal use, and as such, Defendant's overall points should be reduced by 1, taking him to a criminal history category II.

[19.] Considering a criminal history category of II and an offense level of 17, the guideline range for Cameron as calculated by the Presentence Investigation Report is 27-33 months.

**[20.]  3. Mitigating Role.**

[21.]  In addition to the foregoing, Cameron asserts his offense level should be reduced based on his mitigating role in the offense. Cameron maintains that his role in this case should be characterized as minimal pursuant to USSG §3B1.2. Here the Presentence Investigation Report reported a single incident wherein Cameron transported narcotics to North Dakota. Cameron asserts that such a de minimis involvement is a clear implication of USSG §3B1.2 and moves the Court for an adjustment of -4 to the offense level.

## IV. FACTORS FOR CONSIDERATION BY THE COURT

[22.]  Title 18, United States Code Section 3553(a) provides that the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set out in paragraph (2) of that subsection. Section 18 U.S.C. 3553(a) provides the following requisite seven factors to be considered by the Court in determining the particular sentence to be imposed:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed –
    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b. To afford adequate deterrence to criminal conduct;
    c. To protect the public from further crimes of the defendant; and
    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. The kinds of sentences available;
4. The kinds of sentence and the sentencing range established for –

    a. The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced, or

    b. In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

5. Any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to any victims of the offense.

Id. 18 U.S.C. section 3582(a) requires that the Court consider the factors set out in 18 U.S.C. 3553(a), recognizing "that imprisonment is not an appropriate means of promoting correction and rehabilitation." Id. An analysis of the applicable factors in this case is set forth below.

1. **The Nature of the Offense and History and Characteristics of the Defendant.**

[23.] Cameron first urges the Court to recognize that he has an addiction problem. Mr. Dixon does not note this to excuse his behavior, but to explain his previous arrests. Cameron grew up in a very difficult household. His mother was in an abusive relationship with his step-father. While this matter has been pending, Cameron sought to address some of those previously unaddressed mental health concerns. Mr. Dixon obtained and continued treatment for some time regarding his diagnosis which included major depressive disorder and abandonment issues.

[24.]   Prior to this arrest, and subsequent need to get a mental health evaluation and seek treatment for the same, Cameron was using marijuana to excess. As noted in the Presentence Investigation Report, this led to a few contacts with law enforcement over the past fifteen years.  However, Cameron urges the Court to recognize that he is not a hardened criminal with gang contacts.  He is a high school graduate, with some college education who has unresolved issues regarding the conflict he witnessed.

[25.]   To the information and belief of undersigned, Cameron has begun counseling and continues in counseling for his unresolved issues.  Cameron is seeing a psychologist nearly weekly who is also attempting to assist him with his sobriety. Cameron does AA/NA type classes with his therapist as well as some online classes. This shows a willingness to address his ongoing issues as well as receive the treatment and rehabilitation he needs.

[26.]   Cameron urges this Court to recognize that the best means for Cameron based on his family history and characteristics is a period of supervised release which will allow him to continue to address his mental health in legal and positive ways.

### 2. The Need for the Sentence to Promote Certain Statutory Objectives.

#### a. To Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment.

[27.]   There is no indication that Cameron does not have respect for the law. Cameron has plead guilty to the offense, taken responsibility for his actions, and done so in a timely fashion.

[28.] Regarding a just punishment, as noted Cameron has a minimal criminal history regarding marijuana use. While not excusing his actions, the marijuana use is likely due to previously undiagnosed mental health conditions as set forth above. Therefore, the Court facilitating Cameron's mental health treatment in positive and legal ways are more beneficial to Cameron than placement in a detention facility.

### b. The Need to Afford Adequate Deterrence of Criminal Conduct

[29.] Cameron has largely been free of criminal activity his entire life. While true there is evidence of drug use and abuse, Cameron submits to the Court that he is likely better served by treatment, use of AA/NA groups, and supervision through U.S. Probation and Pretrial services, as well as the community at large.

[30.] Cameron urges the Court to recognize that deterrence is not simply punishment to discourage Cameron from engaging in criminal conduct in the future. Deterrence is also providing the tools and skills necessary to succeed in the future as a contributing member of society. Permitting Cameron to be placed on supervised release and continue with the necessary treatment and counseling that he needs to eventually becoming a more fully contributing member of society.

[31.] Allowing Cameron to interact with others in society while on supervised release could result in him serving as an example to others regarding the dangers of drug use and addiction and perhaps offer others hope that there is a path to healthy sober living.

### c. The Need to Protect the Public from Further Crimes of the Defendant.

[32.]   Cameron urges this Court to recognize that based upon his diagnoses and history of marijuana use, that Cameron's greatest deterrence is not jail time, but treatment and continued work on sobriety. In this case Cameron urges the Court to recognize that treatment and rehabilitation are more beneficial for Cameron and society rather than a lengthy period of incarceration.

[33.]   The Defendant in this case has limited to no contact with the other co-Defendants. Cameron notes that this was not a crime of violence nor were there allegations that weapons were used in relation to Cameron's involvement. Cameron urges the Court to recognize that his involvement in the case was very minimal. By the Court aiding Cameron by putting him in a position to succeed in both mental health and addiction treatment, it will aid Cameron in avoiding issues relating to using marijuana and similar drugs in the future.

### d. Defendant's Need for Vocational Training and Other Correctional Treatment in the Most Effective Manner

[34.]   As set forth in the Presentence Investigation Report, Cameron has a high school diploma. Cameron also has obtained more than a year of college credit. However, as also noted in the Presentence Investigation Report, Defendant presently has no field of study to fall back on. Similar to part 2. b., supra, that a period of supervised release would be more beneficial for Cameron, rather than a period of incarceration to allow Cameron to either continue working, or to continue his education.

[35.]   While the Presentence Investigation Report notes that Cameron is presently unemployed, Cameron urges the Court not to overlook the fact that he had

been employed for many months during the pendency of this proceeding. Cameron had become known as a timely, hardworking person in his employment. He believes he will be able to find work again and has been actively seeking new employment.

### 3. Types of Sentences Available and   4. Range Established

[36.]   Cameron is eligible for supervised release pursuant to the statutory provisions. Cameron notes that the range established thereby becomes supervised release, up to the low end of the guidelines range.

### 5. Policy Statements by Sentencing Commission

[37.]   On August 12, 2013, Eric Holder, the Attorney General of the United States of America provided a Memorandum to the United States Attorneys and the Assistant Attorney General for the Criminal Division refining the policy regarding mandatory minimums for non-violent, low-level drug offenders.[1]   Specifically, Attorney General Holder set forth a requirement that the prosecutors consider whether the defendant truthfully and in a timely way provided to the Government all information the defendant has concerning the offense or offenses that were a part of the same course of conduct, common scheme, or plan.

[38.]   Attorney General Holder also set forth a requirement that prosecutors should consider the following factors in relevant part:

- Whether the defendant was an organizer, leader, manager or supervisor of others within a criminal organization;

---

[1] The "Holder Memo" as it became known, was rescinded by then United States Attorney General Jeff Sessions in 2017. However, acting Attorney General Monty Wilkinson rescinded the Sessions recission in a Memorandum of January, 2021.

- Whether the defendant was involved in the use or threat of violence in connection with the offense;
- The nature of the defendant's criminal history, including any prior history of violent conduct or recent prior convictions for serious offenses; and
- Whether the defendant has significant ties to large-scale drug trafficking organizations, gangs, or cartels.

See Memorandum from Eric Holder, Attorney General of the United States, on Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (Aug. 12, 2013).

[39.] In the present action, pursuant to the Presentence Investigation Report, the evidence indicates that Cameron was not an organizer, leader, manager, or supervisor of a criminal organization. There is also no evidence that Cameron was involved in the use or threat of violence in connection with the offense or that he has significant ties to large-scale drug trafficking organizations, gangs, or cartels. In fact, Cameron's statements and the Presentence Investigation Report reveal that he was involved in the conspiracy on a very limited basis. Although Cameron readily admitted he distributed the drugs in this case, he has maintained, throughout this process, that his role in the distribution was extremely limited. The transportation of the drugs in this case occurred only once, and assuredly Cameron regrets that action. Lastly, Cameron's criminal history does not reflect that of a violent individual but that of an individual who has struggled with copious amounts of marijuana usage who needs to be taught the proper tools and skills to overcome his addiction and become a successful and contributing member of society.

[40.] As noted throughout, Cameron has had minimal contacts with law enforcement in the past – mostly related to addiction issues with marijuana. Therefore, Cameron meets the parameters described in attorney general Holder's memorandum as reinstated by acting attorney general Wilkinson.

### 6. Avoiding Unwarranted Sentence Disparities

[41.] There have been no other sentences imposed in this matter to date.

### 7. Provision of Restitution to Victims

[42.] There is no amount of restitution set forth in the Presentence Investigation Report as to Cameron, and he does not dispute such a restitution provision.

### 8. Factors that may Warrant a Sentence Outside of the Advisory Guideline System.

[43.] As noted above, Cameron urges this Court to consider the provisions of both USSG §§ 3B1.2 and 4A1.3. Cameron maintains that, in so doing, Cameron will have a criminal history category I, and an offense level of 13. With these considerations Cameron recognizes that his guideline range would be 12-18 months within Zone C of the sentencing table.

[44.] **V. CONCLUSION**

[45.] There is no longer a presumption that the advisory guidelines range is the correct sentence. *See United States v. Booker*, 543 U.S. 220 (2005). Therefore, Cameron, by and through undersigned counsel suggest a period of supervised release.

[46.] In this case, Cameron is requesting a downward departure and adjustment pursuant to the Sentencing Guideline recommendations based primarily

on the facts that: (1) the current criminal charge is primarily related to his addiction issues involving controlled substances, (2) he has taken responsibility for his actions, (3) Cameron is more likely to benefit from a period of supervised release with addiction treatment and counseling rather than a lengthy period of incarceration, and (4) he has already spent time in incarceration and he has shown that he can be a positive role model and upstanding citizen while on release.

[47.] Based on the foregoing, Cameron requests a period of supervised release.

Dated this 11th day of January, 2024.

        **JACKSON, THOMASON, WELDER & ARTHURS, INC.**
        *Attorneys for Defendant*
        400 East Broadway Avenue, Suite 51
        Bismarck, ND 58501
        Phone: (701) 751-4847
        Fax: (701) 751-4845
        Email: thomas@bismanlaw.com

        */s/ Thomas M. Jackson*
        **By: Thomas M. Jackson** (ND ID 05947)